UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JAMES GODOY, et al.,

    Plaintiffs,

v.

ROBERT A. HOREL, et al.,

    Defendants.
    _____/

No. C 09-4793 PJH

**ORDER GRANTING MOTION TO DISMISS**

Defendants' motion to dismiss the above-entitled action pursuant to Federal Rule of Civil Procedure 12(b)(6) came on for hearing before this court on March 3, 2010. Plaintiffs appeared by their counsel Herman Franck, and defendants appeared by their counsel Christopher Young. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby GRANTS the motion.

## BACKGROUND

This is a case brought under 42 U.S.C. § 1983, filed as a proposed class action, by eight named plaintiffs who are currently incarcerated at Pelican Bay State Prison ("PBSP"). Defendants are Robert Horel, former warden of PBSP; Francisco Jacquez, current warden of PBSP; N. Grannis, former (also possibly current) chief of Inmate Appeals Branch at PBSP; and Matthew Cate, Secretary of California Department of Corrections and Rehabilitation ("CDCR").

Plaintiffs allege that during the period June 1, 2008 to May 31, 2009, and thereafter, defendants administered a program implemented by CDCR, in which the State sought to make up for lost funds in the Inmate Welfare Fund[1] by issuing a series of price increases to

---

[1] The money from the Inmate Welfare Fund is used for the benefit, education, and welfare of inmates of prisons and institutions under the jurisdiction of CDCR, including the establishment, maintenance, employment of personnel for, and purchase of items for sale to

various products sold to inmates in the prison canteens.[2]

In Schneider v. California Dep't of Corrections, 151 F.3d 1194 (9th Cir. 1998) (Schneider I), the Ninth Circuit held that prison inmates possess a constitutionally cognizable property right in interest earned on funds deposited in Inmate Trust Accounts,[3] and that this property interest triggers Takings Clause scrutiny. See id. at 1201.

Prior to the time of that decision, the CDC had been depositing the interest earned on Inmate Trust Accounts into the Inmate Welfare Fund, rather than paying it to the inmates whose funds were earning the interest. A consent decree was eventually issued in Schneider, pursuant to which the CDCR agreed that the former practice of diverting the interest from the Inmate Trust Accounts to the Inmate Welfare Fund would be terminated, and that inmates would receive the interest from those accounts. The present complaint alleges that CDCR raised the prices on products sold in the prison canteens in order to make up for that lost revenue source.

The complaint asserts four causes of action, against all four defendants – (1) a § 1983 claim for violation of the 5th Amendment Takings Clause; (2) a claim under California Business & Professions Code § 17200; (3) a state law claim of conversion; and (4) a claim of "inverse condemnation of money," in violation of Art. 1, § 18 of the California

---

inmates at prison canteens, and for the establishment, maintenance, employment of personnel, and necessary expenses in connection with the operation of prison hobby shops. All net proceeds from the operation of canteens and hobby shops are deposited into this fund. The fund also provides for certain inmate benefits within the operation of inmate canteens – purchase of books and periodical publications, rental of movies, purchase of handicraft equipment, purchase of inmate newspaper supplies and materials, and inmate pay. The canteens also provide inmates with "toilet articles, candy, notions, and other sundries." See Cal. Penal Code §§ 5005-5007.

[2] The only product mentioned in the complaint, which was also the subject of the administrative appeals filed by plaintiff James Godoy, is instant coffee – specifically, Folgers instant coffee. Plaintiffs allege that the price charged for an 8-ounce container of the instant coffee in the canteen was increased from $6.40 to $7.50.

[3] As described by the court in Schneider v. California Dep't of Corrections, 345 F.3d 716, 718 (9th Cir. 2003) (Schneider II), prison inmates are not permitted to possess money while in prison, and the CDC therefore established two types of trust accounts into which personal funds could be placed during incarceration – the Inmate Passbook Savings Account, which pays interest to the inmate on the principal balance, and the Inmate Trust Account, which did not pay interest.

Constitution. Plaintiffs seek declaratory and injunctive relief, and compensatory and punitive damages, plus costs of suit and attorney's fees.

Defendants now seek an order dismissing all four causes of action for failure to state a claim. They also assert that they are entitled to qualified immunity concerning the monetary damages claims.

## DISCUSSION

A. Legal Standard

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Review is limited to the contents of the complaint. Allarcom Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). To survive a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the minimal notice pleading requirements of Federal Rule of Civil Procedure 8. Rule 8(a)(2) requires only that the complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Specific facts are unnecessary – the statement need only give the defendant "fair notice of the claim and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). All allegations of material fact are taken as true. Id. at 94. However, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic, 550 U.S. at 555 (citations and quotations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

A motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. See id. at 558-59. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009).

3

B.  Defendants' Motion

Defendants argue that none of the four causes of action states a claim, and, moreover, that they are entitled to qualified immunity as to the damages claims.

1.  Fifth Amendment Claim

In the first cause of action, plaintiffs assert a § 1983 claim for violation of the Fifth Amendment Takings Clause, alleging that the price charged for coffee in the canteen does not reflect a price increase imposed by the supplier, but rather represents CDCR's effort to replenish a loss to the Inmate Welfare Fund by taking money belonging to plaintiffs. Defendants argue that the first cause of action fails to state a claim.

The United States Constitution provides that "[n]o person shall be deprived of property, without due process of law; nor shall private property be taken for public use without just compensation." U.S. Const., Amend. V. While the Fifth Amendment does not preclude the government from confiscating private property, it does impose two conditions on the exercise of such authority – the taking must be for a "public use," and "just compensation" must be paid to the owner. Brown v. Legal Found. of Wash., 538 U.S. 216, 231-32 (2003). The Takings Clause is applicable to the states through the Fourteenth Amendment. Dolan v. City of Tigard, 512 U.S. 374, 383 (1994).

In order to state a claim under the Takings Clause, a plaintiff must allege facts showing that he possesses a "property interest" that is constitutionally protected. See Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1000-01 (1984). Only if the plaintiff possesses such an interest "will a reviewing court proceed to determine whether the expropriation of that interest constitutes a 'taking' within the meaning of the Fifth Amendment." Schneider I, 151 F.3d at 1198.

Here, defendants assert, plaintiffs have no constitutionally protected property interest in a particular set price for coffee or any other canteen item. They argue that the contention that plaintiffs have a property interest in an increased price because they will have to trade more of their money for goods has no support in takings jurisprudence.

Defendants also argue that no "taking" has occurred because plaintiffs voluntarily

4

exchange their money for items in the canteen, with full knowledge of the prices. They note in addition that the facts alleged in the complaint show that the June 2008 canteen list with the increased prices was provided to Godoy in advance of the price increase, on May 30, 2008. They assert that if he was unwilling to pay the increased prices he could simply have refrained from purchasing coffee and other items.

In opposition, plaintiffs argue that they have stated a takings claim, relying on the holding and reasoning in Schneider II, 345 F.3d at 720-22, where the Ninth Circuit found that a taking had occurred because the State had deprived the inmates of interest accrued on their own funds. The court found that it was no less a taking because the State had used the money to confer a benefit on other inmates (by depositing the interest in the Inmate Welfare Fund). The present case is factually distinguishable from Schneider, however, as there is a difference between the State taking the interest earned by inmates on their own money, and the State determining to raise prices in the canteen (for whatever reason), which by itself does nothing to deprive the inmates of their own property.

The court finds that plaintiffs have failed to allege a cognizable takings claim under the Fifth Amendment. Not only are prison inmates not compelled to purchase any items from the prison canteen, but the State is not in fact required to offer any items for sale in a canteen to prison inmates. See Cal. Penal Code § 5005. As for plaintiffs' argument that the raising of the price of coffee in June 2008 constituted a "confiscation" of their "private monies," this claim is not plausible, as plaintiffs authorized the expenditures.

Based on the facts alleged in the complaint, plaintiffs were free to purchase or not to purchase items from the canteen. They were aware of what prices were charged for the items they wanted to purchase, and they authorized the expenditure of funds from their trust accounts to purchase those items. The State did not deprive them of property without compensation.

Moreover, there is no constitutional right to purchase items from the canteen. See Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996); see also Haubrich v. MacDonald, 2006 WL 2830174 at *6 (D. Mont., Oct. 2, 2006) (inmates have no constitutional right to spend

money at prison canteen or to obtain food or property other than the necessities of life, which must be provided by prison officials; allegation that spending restrictions have reduced the amount plaintiff might spend at canteen from $40.00 to $10.00 failed to state a claim).

2. Section 17200 Claim

In the second cause of action under § 17200 (the Unfair Competition Law, or "UCL"), plaintiffs allege that the increases in canteen prices constitute "price gouging" and "conversion," and are illegal, in violation of Art. 1, § 19 of the California Constitution and the 5th Amendment to the U.S. Constitution. Defendants contend that the second cause of action fails to state a claim.

Business & Professions Code § 17203 establishes the right to sue "any person" for unfair competition, which under § 17200 includes any unlawful, unfair, or fraudulent business act or practice. Section 17201 defines "persons" as meaning "natural persons, corporations, firms, partnerships, joint stock companies, associations, and other organizations of persons." Cal. Bus. & Prof. Code § 17201.

The State of California, its subdivisions or agencies, and other governmental entities are not "persons" subject to suit under the UCL. See, e.g., Trinkle v. California State Lottery, 71 Cal. App. 4th 1198, 1203-04 (1999) (as state agency, California State Lottery is not "person" amendable to suit under UCL). Defendants contend that because plaintiffs may not sue the State under § 17200, they therefore may not sue defendants in their official capacities.

Defendants also contend that plaintiffs may not sue defendants in their individual capacities for violation of the UCL, because they are immune from suit. State employees are immune from suit for acts or omissions that are the "result of the exercise of discretion vested in [them], whether or not such discretion be abused." Cal. Gov't Code § 820.2. Government Code § 820.2 creates discretionary immunity for basic policy or planning decisions that have been entrusted to the public agency in question, but does not apply to operational decisions or decisions that are made in implementing agency policies.

6

See Caldwell v. Montoya, 10 Cal. 4th 972, 979-89 (1995).

Here, defendants assert, the setting of prices for items in the canteen is a discretionary function entitled to immunity under § 820.2. Under the California Penal Code, "[t]he sale prices of the articles offered for sale [in the canteen] shall be fixed by the director at the amounts that will, as far as possible, render each canteen self-supporting." Cal. Pen. Code § 5005. Thus, defendants argue, the pricing of items in the canteen is a discretionary function that ensures that budgetary needs are met.

In addition, defendants argue, because under the Penal Code, the Inmate Welfare Fund was created to enable (among other things) the operation of prison canteens, and because any and all profits from sales of goods is used to operate the canteens, defendants accrue no benefit from canteen operations, and may not be sued under the UCL.

In opposition, plaintiffs contend that they have stated a valid claim under § 17200, and that there is no immunity for violation of § 17200. They cite Government Code § 820, which provides that "except as otherwise provided" by § 820.2, "a public employee is liable for injury caused by his act or omission to the same extent as a private person," and that the liability of a public employee is "subject to the same defenses that would be available to the public employee if he were a private person." Cal. Gov't Code § 820. Plaintiffs argue that since a private person can be liable for UCL violations, a public employee can as well.

The court finds that the motion must be GRANTED. Plaintiffs appear to be attempting to proceed under the "unlawful" and "unfair" prongs of § 17200. However, they do not allege facts showing that the raising of canteen prices was unlawful, as it did not violate any law. They also do not allege facts showing that it was unfair, as that provision of § 17200 has been interpreted by California courts. See, e.g., Davis v. Ford Motor Credit Co., 179 Cal. App. 4th 581, 593-99 (2009).

In addition, defendants cannot be sued in their official capacities for violation of § 17200, and they are immune from suit under Government Code § 820.2 for tort claims

7

based on the discretionary function of setting of prices in the prison canteen.

3. Conversion Claim

In the third cause of action, plaintiffs allege a state-law claim of conversion. Defendants argue that this cause of action fails to state a claim. A plaintiff in a conversion action must also prove that it did not consent to the defendant's exercise of dominion. See Farrington v. A. Teichert & Son, Inc., 59 Cal. App. 2d 468, 474 (1943) There can be no conversion "where an owner either expressly or impliedly assents to or ratifies the taking, use, or disposition of his property." Bank of New York v. Fremont General Corp., 523 F.3d 902, 914 (9th Cir. 2008) (quoting Farrington, 59 Cal. App. 2d at 474).

Here, plaintiffs alleged that they purchased items from the canteen at prices that were too high. In order to make purchases from the canteen, inmates must submit a written request to the trust office to authorize the transfer of funds from their trust accounts to the canteen. See Cal. Code Regs., tit. 15, §§ 3090, 3091. Defendants contend that plaintiffs cannot state a claim for conversion because they authorized the transfer of funds from their trust accounts to the canteen.

In addition, money cannot be the subject of a claim of conversion unless the plaintiff alleges a specific, identifiable sum. PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP, 150 Cal. App. 4th 384, 395 (2007). As a further reason for dismissal of this cause of action, defendants contend that plaintiffs cannot state a claim for conversion because they failed to allege a specific, identifiable sum.

In opposition, plaintiffs argue that because the inmates are unable to purchase from any store other than the prison canteen, they are "captive" customers, and as such, their purchases are not "voluntary." They also seek leave to amend their conversion claim, arguing that they can state the actual amount taken from them. They include a chart listing "amount in damages" and "time period" for which those damages allegedly accrued.

The court finds that the motion must be GRANTED. Plaintiffs cannot state a claim for conversion based on purchases they voluntarily made at the canteen. Plaintiffs were not compelled to purchase coffee from the canteen after the June 2008 price increase, and

8

because plaintiffs expressly assented to the purchases (and do not allege that they did not assent to the purchases), they cannot state a plausible claim for conversion.

4.  Inverse Condemnation Claim

In the fourth cause of action, plaintiffs allege a claim of "inverse condemnation of money," in violation of Art. 1, § 18 of the California Constitution. Defendants argue that the fourth cause of action fails to state a claim for the same reasons that the first cause of action fails to state a claim – that plaintiffs have no property interest in canteen prices, and no taking occurred because plaintiffs willingly paid for items from the prison canteen.

Article 1, § 18 the state equivalent of the Takings Clause of the Fifth Amendment. Both delineate the governmental power of eminent domain. Burbank-Glendale-Pasadena Airport Authority v. Hensler, 83 Cal. App. 4th 556, 561 (2000); see also Customer Co. v. City of Sacramento, 10 Cal. 4th 368, 377 n.4 (1995). California courts construe the federal and California Takings Clauses in the same manner. Small Property Owners of San Francisco v. City and County of San Francisco, 141 Cal. App. 4th 1388, 1396 (2006). Accordingly, the motion is GRANTED for the same reasons as stated above with regard to the first cause of action.

**CONCLUSION**

In accordance with the foregoing, the court GRANTS defendants' motion to dismiss the complaint for failure to state a claim.[4] Because the court finds that amendment would be futile, the dismissal is WITH PREJUDICE. See Eminence Capital LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).

**IT IS SO ORDERED.**

Dated: March 8, 2010

PHYLLIS J. HAMILTON
United States District Judge

---

[4] Because the court finds no constitutional violation alleged, it does not address the issue of qualified immunity.